FRANK N. CARDULLO *vs*. SAMUEL LANDAU & another.

Suffolk.   October 4, 1951. — May 1, 1952.

Present: QUA, C.J., WILKINS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Deceit.   Fiduciary.   Joint Enterprise.   Partnership*, What constitutes·
*Release.*

A plaintiff who paid a defendant for shares of stock on the basis of a
representation by the defendant that the shares had cost him a cer-
tain sum larger than the actual cost could not recover against the de-
fendant for deceit where it did not appear that the shares were not
worth what the plaintiff paid the defendant for them or that the
plaintiff had sustained any damage.

An arrangement between a plaintiff and a defendant whereby the de-
fendant was to finance a purchase of the stock of a corporation and
the plaintiff was to manage its business with the right to acquire one
half of the stock and pay for it out of profits was neither a joint enter-
prise nor a partnership, although referred to in the parties' conversa-
tions as a "fifty-fifty partnership," and there was no fiduciary relation
between them.

No ground was disclosed by the record for avoiding the effect on the plain-
tiff's claims of a general release given by him to a defendant not in a
fiduciary relation to him.

BILL IN EQUITY, filed in the Superior Court on July 27,
1948.

The suit was heard by *Brogna*, J.

*Carlton W. Spencer*, (*Arthur Vitagliano* with him,) for the
defendant Landau.

*Bernard Wall*, for the plaintiff.

SPALDING, J.   The plaintiff brings this suit to recover
a secret profit alleged to have been made by the defendant
Landau, hereinafter called the defendant, in violation of a
duty of fidelity and good faith owed to the plaintiff, and to
reach and apply Landau's shares in Landau, Inc.   G. L.
(Ter. Ed.) c. 214, § 3 (8).   The plaintiff also seeks to recover
on the basis of deceit.

The case comes here on the defendant's appeals from an
interlocutory decree overruling his demurrer and from a final

decree in favor of the plaintiff. The evidence is reported.
The judge voluntarily made brief findings of fact which ob-
viously are not the equivalent of a report of all the ma-
terial facts. See *Birnbaum* v. *Pamoukis*, 301 Mass. 559,
561–562. The entry of the decree for the plaintiff, however,
imports a finding of every fact essential to sustain it within
the scope of the pleadings and supported by the evidence.
*Warner* v. *Selectmen of Amherst*, 326 Mass. 435, 436.

Facts found by the judge and those found by us include
the following: In June, 1945, the defendant induced the
plaintiff to leave his employment and to take the position
of manager of the restaurant of Wursthaus, Inc., on the
representation that he (the plaintiff) would have the oppor-
tunity of purchasing a one-half interest in the corporation,
the payments for such interest to be made from the profits
thereof. The defendant, as part of this arrangement, pur-
chased the 70 outstanding shares of the capital stock of
Wursthaus, Inc., hereinafter called the corporation, and put
30 shares in the plaintiff's name, 30 in the name of his book-
keeper, and 10 in the name of his attorney. The shares
standing in the plaintiff's name were indorsed in blank by
him and left with the defendant. At first the plaintiff was
paid a salary of $75 a week and this was later increased to
$100; he also was paid a bonus.

The business thrived and the defendant, although re-
quested by the plaintiff to do so, was reluctant to allow the
plaintiff to acquire a half interest in the business. The
plaintiff brought suit to compel performance of the agree-
ment. On November 6, 1946, the plaintiff and the defend-
ant by a written agreement adjusted their differences. By
the settlement the plaintiff received 5 additional shares of
Wursthaus, Inc., so that he then had 35 shares and an inter-
est in the corporation equal to that of the defendant. Upon
the defendant's representation that the 70 shares had cost
him $48,000 the plaintiff paid to the defendant the sum of
$27,674.20[1] for his 35 shares. In fact the shares had cost

---

[1] $24,000 of this sum represents the price of the shares and the balance
was an interest charge of 10%.

the defendant $41,782.95. The plaintiff did not learn of this until sometime in May, 1948. In November, 1947, the defendant brought a suit against the plaintiff based on alleged irregularities in the plaintiff's conduct of the business. In December, 1947, a settlement was arrived at whereby the defendant sold his 35 shares of stock in the corporation to the plaintiff for $48,750. The plaintiff, in acquiring these shares, did not rely on the defendant's prior representation as to what the shares had cost him. In conjunction with this settlement the plaintiff delivered to the defendant a general release of all claims and demands on January 12, 1948.

The judge found that the plaintiff was entitled to recover the sum of $2,492.93 "which includes a return of the interest charged on the difference between the $24,000 and one half of the cost as found by me." A decree was entered accordingly.

Since, as will appear presently, the defendant is entitled to prevail on the merits, a discussion of the demurrer would be academic. It will suffice to say that we think it was rightly overruled.

The decree below can stand only if the evidence would support a finding that the relationship of the parties was of a fiduciary nature and that the defendant made a secret profit at the expense of the plaintiff. The plaintiff's proof does not go far enough to permit recovery for deceit. We assume that the defendant's representation as to what he had paid for the shares would be actionable if the other elements required by the law of deceit were present. *Kabatchnick* v. *Hanover-Elm Building Corp.* 328 Mass. 341. But here the plaintiff failed to show that he sustained any damage, proof of which was essential to recovery for deceit. *Connelly* v. *Bartlett,* 286 Mass. 311, 315. *Pearl* v. *Wm. Filene's Sons Co.* 317 Mass. 529, 532. *Dubois* v. *Atlantic Corp.* 322 Mass. 512, 520–521. *Kilroy* v. *Barron,* 326 Mass. 464, 465–466. For aught that appears the shares may have been worth what the plaintiff paid for them. Moreover, as stated above, the plaintiff in January, 1948,

released the defendant from all claims and demands. In the absence of a fiduciary relationship existing at that time this release, which is very comprehensive, would bar recovery by the plaintiff. The trial judge made no express findings on the issue of fiduciary relationship, but he must have impliedly found that such relationship existed. The question therefore narrows down to whether this implied finding is supported by the evidence. We think that it was not.

If the relationship of the parties here was of a fiduciary nature it must be, as the plaintiff contends, because they were either partners or joint adventurers. No other basis for such a relationship is urged, and the evidence affords none. If the parties were either partners or coadventurers they owed to each other the utmost good faith and loyalty. *Arnold* v. *Maxwell*, 223 Mass. 47, 49–50. *Flint* v. *Codman*, 247 Mass. 463, 471. *Mendelsohn* v. *Leather Manuf. Corp.* 326 Mass. 226, 233.

Although this court on several occasions has discussed joint adventures, it has never attempted a comprehensive definition of that relationship. See *Ross* v. *Burrage*, 233 Mass. 439, 448; *Edgerly* v. *Equitable Life Assurance Society*, 287 Mass. 238, 243; *Berwin* v. *Cable*, 313 Mass. 431, 435; *Mendelsohn* v. *Leather Manuf. Corp.* 326 Mass. 226, 233. We do not now attempt such a definition. Speaking generally a joint adventure is a partnership of a sort or, at least, it has many of its characteristics. It differs, however, from a partnership in that it is ordinarily, although not necessarily, limited to a single enterprise, whereas a partnership is usually formed for the transaction of a general business. As between the parties, as in the case of a partnership, the relationship of joint adventurers is a matter of intent and arises only when they intend to associate themselves as such. *Edgerly* v. *Equitable Life Assurance Society*, 287 Mass. 238, 243. *Simpson* v. *Richmond Worsted Spinning Co.* 128 Maine, 22, 30. *Hutchinson* v. *Birdsong*, 211 App. Div. (N. Y.) 316, 319.

The pertinent evidence on the issue of joint adventure or partnership was in substance this: When the parties first

began to discuss their proposed association the defendant said that he would purchase the business if the plaintiff "would go in with him." The plaintiff said, "As an employee I am not interested." The defendant replied, "No. As a partner, a fifty-fifty partnership." It was agreed that the defendant would finance the enterprise and the plaintiff was to manage it. The plaintiff also had the right to acquire one half of the stock of the corporation and was to pay for it out of profits. The plaintiff testified that he understood that he was to own a one-half interest in the enterprise from the outset. He conceded, however, that he entered into no binding agreement with the defendant or the corporation to manage the business and was free to quit at any time. The plaintiff made no contribution of property or money to the purchase of the business. That was furnished by the defendant. The agreement was silent as to how the plaintiff would acquire the stock if no profits were earned; it was also silent on the matter of sharing losses. While perhaps no one of the matters just enumerated is decisive, we are of opinion that considered together they would not afford the basis of a finding that the parties were coadventurers or partners. Notwithstanding that they may have referred to their relationship at the beginning as a partnership, the gist of the arrangement as finally entered into was that the plaintiff was to become an employee of the corporation with the right to purchase one half of its stock out of profits. See *Ross* v. *Burrage*, 233 Mass. 439, 448; *Ball* v. *Harrison*, 314 Mass. 390, 395. The fact that the parties were stockholders of the corporation, of course, did not make their relationship to each other one of trust and confidence. *Mairs* v. *Madden*, 307 Mass. 378, 380.

Having failed to establish that his relationship with the defendant was of a fiduciary nature, the plaintiff shows no grounds for recovery against the defendant or for avoiding the effect of the release. The interlocutory decree overruling the demurrer is affirmed. The final decree is reversed and a new decree is to be entered dismissing the bill. The defendant is to have costs of this appeal.

*So ordered.*