Curran, Dennis J., J.
This case arises from Taymil Partners, LLC and Steven R. As trove’s interactions and communications with Robert S. Gatof, a then-director and shareholder at Northland Investment Corporation. Northland alleges that Taymil and Mr. Astrove *469 assisted Mr. Gatof in breaching his fiduciary duty to Northland and benefited as a result. Taymil and Mr. Astrove now move for summary judgment on all counts of Northland and Lawrence W. Gottesdiener’s claims that allege aiding and abetting a breach of fiduciary duty (Count V) against Taymil and Mr. As-trove, violation of G.L.c. 93A, §11 (Count VI) byTaymil, and a declaration of constructive trust (Count VII) against Mr. Astrove.
For the following reasons Taymil and Mr. Astrove’s motion for summary judgment is ALLOWED in part, and DENIED in part.
FACTUAL BACKGROUND
The following facts are taken from the summary judgment record and the Consolidated Statement of Material Facts the parties filed under Superior Court Rule 9A(b)(5), and will be recited in the light most favorable to Northland, the non-moving party. See Attorney Gen. v. Bailey, 386 Mass. 367, 371 (1982).
Steven R. Astrove formed Taymil Partners, LLC in 2002. Consolidated Statement of Material Facts at par. 4. Taymil’s business focuses on acquiring and managing multifamily properties in New England. Id. Mr. Astrove had a close relationship with Northland and its executives, having worked at Northland for approximately six months. See id. at pars. 5-10, 12; Northland’s Additional Statement of Material Facts at par. 3. Northland is a real estate investment entity that specializes in the acquisition, development, and management of various properties. Consolidated Facts at par. 1.
Northland gave Taymil two interest-free loans of $100,000 to help Taymil get started. Id. at pars. 14-15. Several Northland executives and investors also made investments in Taymil entities. See id. at pars. 18-20, 23-29.
In about March of2004, Robert S. Gatof, a director, shareholder, and at that time president and Chief Executive Officer of Northland, signed a Letter Agreement outlining his compensation and benefits, and including broad non-compete and non-disclosure provisions, with Northland. See id. at pars. 30-37. Mr. Astrove neither assisted in drafting or advising on the Letter Agreement, nor did Mr. Gatof, Lawrence Gottesdiener[2] or Steven Rosenthal[3] ever discuss the terms of the Letter Agreement with him. Seeid. at pars. 39-44.
Mr. Astrove offered promotion and subparticipation interests in Taymil entities to Mr. Gatof, Mr. Gottesdiener, and Northland. Id. at par. 47; Additional Statement at pars. 5-6. Mr. Gottesdiener declined on behalf of himself and Northland. Consolidated Facts at par. 47; Additional Statement at par. 8. Subparticipation interests were granted to Mr. Gatof in several later deals. See Additional Statement at par. 9. In 2011, Mr. Astrove drafted a proposal in which Mr. Gatof would receive a ten percent interest in Taymil in consideration for his investments and advice. See id. at par. 10.
At some point, Mr. Astrove required a loan for one of Taymil’s investments and Mr. Gatof provided it. See Consolidated Facts at pars. 49-51; Additional Statement at pars. 15-17, 19. Mr. Gatof provided another loan to Taymil in June of 2011. Additional Statement at par. 20.
Early in 2011, Mr. Gatof invested $100,000 in a Taymil entity for a project in Bedford, New Hampshire, which Taymil purchased jointly with the Praedium Group, LLC. Id. at pars. 21, 23. Northland had considered purchasing the same property, but had decided against it. Id. at par. 22.
Mr. Gatof was responsible for handling relations with several “key” Northland investors. Id. at par. 30. He spoke with at least two of these individuals, Messrs. Baumann and Rosen, about investing in Taymil projects. See id. at pars. 31-32.
Mr. Gatof filed suit against Northland alleging that Northland breached various agreements into which they had entered and Northland counterclaimed against Mr. Gatof and others, including Taymil and Mr. Astrove, for their assistance, encouragement, and knowledge of Mr. Gatof s alleged breaches of the Letter Agreement and his fiduciary duties to Northland.
DISCUSSION
I. Standard of Review
Summary judgment will be granted where, viewing the evidence in the light most favorable to the non-moving party (here, Northland), all material facts have been established, and the moving party is entitled to judgment as a matter of law. Cabot Corp. v. AVX Corp., 448 Mass. 629, 636-37 (2007).
When the moving party does not bear the burden of proof at trial, as is the case here, it is entitled to summary judgment either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of its case. Kourouvacilis v. Gen. Motors, 410 Mass. 706, 716 (1991). Once the moving parly meets its burden, the non-moving party must provide specific facts to show that there is a genuine issue for trial. Id.
In deciding summary judgment motions, the court may consider pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Polaroid Corp. v. Rollins Envtl. Servs., 416 Mass. 684, 696 (1993), citing Conley v. Massachusetts Bay Transp. Auth., 405 Mass. 168, 173 (1989). While the court views the evidence in the light most favorable to the non-moving party, it does not weigh the evidence, determine witness credibility, or make its own findings of fact. Attorney Gen. v. Bailey, 386 Mass. at 370-71.
*470 II.Taymil and Mr. Astrove’s Alleged Aiding and Abetting
For Taymil and Mr. Astrove to be liable for aiding and abetting a breach of fiduciary duty, Northland bears the burden of proving: “(1) [there was] a breach of fiduciary duty, (2) [Taymil and Mr. Astrove] . . . [knew] of the breach, and (3) [Taymil and Mr. Astrove ... actively participate^] or substantially assist[ed] in or encourage[d] the breach to the degree that [Taymil and Astrove] could not reasonably be held to have acted in good faith.” See Arcidi v. National Ass’n of Gov’t Employees, Inc., 447 Mass. 616, 623-24 (2006).
In a close corporation, shareholders owe other shareholders a duty of utmost good faith and loyalty. See Donahue v. Rodd Electrotype Co. of New England, Inc., 367 Mass. 578, 593 (1975), quoting Cardullo v. Landau, 329 Mass. 5, 8 (1952) (internal quotations omitted). However, “[w]hen a director’s contested action falls entirely within the scope of a contract between the director and the shareholders, it is not subject to question under fiduciary duly principles.” Chokel v. Genzyme Corp., 449 Mass. 272, 278 (2007), citing Blank v. Chelmsford Ob/Gyn, P.C., 420 Mass. 404, 408 (1995). Therefore, where the conduct was “contemplated by the terms of the parties’ written agreements!, courts] have declined to find liability for breach of fiduciary duty.” Selmark Assocs., Inc. v. Ehrlich, 467 Mass. 525, 537 (2014). However, where the conduct complained of is not entirely within that governed by the agreement, a claim of breach of fiduciary duty may still succeed. Id.
Whereas in Selmark, the employment agreement had expired some time before the conduct giving rise to the action, see Selmark, 467 Mass. at 538-39, here, the Letter Agreement was still in effect at the time of the alleged conduct. See exhibit 15. Similarly, in Merriam v. Demoulas Super Mkts., Inc., 464 Mass. 721, 726-29 (2013), the Supreme Judicial Court held that the shareholders’ actions fell entirely within the scope of an agreement, and therefore they were not bound by fiduciary duty, even if the shareholders’ actions would have otherwise constituted a breach of fiduciary duly.
The record evidence discloses that the Letter Agreement focuses on ensuring that Mr. Gatof did not compete with, disclose information, or solicit business away from Northland. See exhibit 15. Northland’s breach of fiduciary duty claim is based upon allegations that Mr. Gatof usurped corporate opportunities from Northland and that he assisted, advised, and invested in Taymil. See First Amended Complaint of Defendant Northland Investment Corporation and Plaintiff-in-Counterclaim Lawrence R. Gottesdiener, at pp. 14-15 [hereinafter First Amended Complaint]. The alleged usurpation of Northland’s corporate opportunities and investment, support, and advice to Taymil can effectively be described as competition with Northland. Mr. Gatofs alleged conduct falls precisely within the scope of the Letter Agreement, particularly because the Letter Agreement covers rights and duties of Mr. Gatof with regard to competition with North-land. The Letter Agreement broadly prohibits “as-sociat[ing] in any manner with, engagfing] in or hav[ing] a financial interest in any business which is directly or indirectly competitive with the business of [Northland].” See exhibit 15, at par. 4(b)(i); exhibit 6, atp. 117:15-18. The Letter Agreement therefore directly encompasses the challenged conduct and would preclude Northland from pursuing breach of fiduciary duty claims. See Merriam, 464 Mass. at 726-29; Chokel, 449 Mass. at 278; Blank, 420 Mass. at 404.
Therefore, because the Letter Agreement precludes Northland’s claim for breach of fiduciary duty, Taymil and Mr. Astrove are entitled to judgment as a matter of law on the aiding and abetting breach of fiduciary duly claim (Count V), because Northland will be unable to prove a breach of fiduciary duty occurred. See Kourouvacilis, 410 Mass. at 716.
III.Taymil’s Alleged Violation of G.L.c. 93A, §11
The pleadings are unclear as to whether Northland asserts this claim solely on the basis that Taymil knew Mr. Gatof was breaching his fiduciary duty to North-land or whether Taymil knew and encouraged Mr. Gatofs alleged breach of the Letter Agreement. See First Amended Complaint, at p. 16. It is indicated, though not addressed by the parties in their memo-randa, that the violation of G.L.c. 93A claim may be based upon Taymil’s conduct in allegedly knowing that Mr. Gatof was in breach of the Letter Agreement. See id. A breach of contract will only give rise to a violation of G.L.c. 93A when it is willfully intended to “secur[e] unbargained-for benefits.” City of Revere v. Boston/Logan Airport Associates LLC, 443 F.Sup.2d 121, 129 (D.Mass 2006). Viewing the record in the light most favorable to Northland, the record indicates a dispute as to whether Taymil knew of the Letter Agreement and its contents. See exhibit 2, at pp. 113:23-119:8; exhibit 5, at pp. 111:15-17; exhibit 9, at pp. 93:9-98:13. Cases in which state of mind or knowledge is at issue are generally not proper for summary judgment. See Quincy Mut. Fire Ins. Co. v. Abernathy, 393 Mass. 81, 86 (1991). Therefore, because there is a dispute as to whether Taymil knowingly and willfully encouraged and accepted the benefits of Mr. Gatofs alleged breach of contract, it would be improper for the court to make a ruling as a matter of law. The violation of G.L.c. 93A claim (Count VI) must survive the motion for summary judgment.[4]
IV.Northland’s Request for the Imposition of a Constructive Trust
While it is true that the imposition of a constructive trust is an equitable remedy, see Paladjian v. Pahlavi, 614 F.Sup. 1569, 1578 (D.Mass 1989), a count requesting a declaration of constructive trust may be allowed or denied at the summary judgment stage. See, e.g. Crosslight Org., Inc. v. Williams, 13 Mass. L. *471 Rptr. 363 (Mass.Super. 2001); Delorie v. Bolduc, 1998 WL 1184174 (Mass.Super. 1998); Aubuchon v. Howart, 1998 WL 1182245 (Mass.Super. 1998); da Silva v. Coffee Connection, Inc., 3 Mass. L. Rptr. 36 (Mass.Super. 1994). The basis for the imposition of a constructive trust must be in fraud, a breach of fiduciary duty, or other wrongful use of confidential information that benefits the recipient and harms the discloser. Superior Glass Co., Inc. v. First Bristol County Nat'l Bank, 8 Mass.App.Ct. 356, 361 (1979), citing Barry v. Covich, 332 Mass. 338, 342 (1955).
Here, Northland has neither pleaded a count in fraud, nor asserted facts giving rise to a claim of fraud against Mr. Astrove. See generally First Amended Complaint. Additionally, there can be no action sustained for breach of fiduciary duty. However, the question of Mr. Astrove’s knowledge of Northland’s confidential information and how he may have subsequently used that information to his benefit and Northland’s detriment is disputed. Therefore, it would be inappropriate to enter judgment as a matter of law on Northland’s request for the imposition of a constructive trust (Count VII).
ORDER
For these reasons, the defendants Taymil and Mr. Astrove’s motion for. summary judgment is ALLOWED with respect to Count v. against Taymil and Mr. As-trove, and DENIED with respect to Count VI against Taymil and Count VII against Mr. Astrove.

Northland’s co-founder and chairman of the board of directors. Consolidated Facts at par. 2.

Northland’s president, chief executive officer, and former outside counsel. Consolidated Facts at par. 17.

As noted, it is unclear whether the violation of G.L.c. 93A claim is based upon Taymil’s alleged knowledge and encouragement of Mr. Gatof s alleged breach of his fiduciary duties or his alleged breach of the Letter Agreement. Factual disputes relating to whether Taymil knew of the alleged breaches, and whether its conduct rose to the level required for a violation, require that summary judgment be denied. However, Northland cannot base its claim on a breach of fiduciary duty. While aiding and abetting a breach of fiduciary duty would rise to the level of a violation of G.L.c. 93A, see Hanover Ins., Co. v. Sutton, 46 Mass.App.Ct. 153, 173 (1999), where the alleged violation is wholly based on an underlying claim which cannot be proven, the G.L.c. 93A claim must fail. See Sgarzi v. Sharkansky, LLP, 32 Mass. L. Rptr. 57 at *4 (Mass.Super. 2014). Here, as noted above, the aiding and abetting the breach of fiduciary duty claim must fail because Northland will not be able to prove that a breach of fiduciary duly occurred. Therefore, inasmuch as Northland’s violation of G.L.c. 93A claim is based on the alleged breach of fiduciary duty, Northland’s claim must fail. See id.