HENRY HUBERT & another[1] vs. MELROSE-WAKEFIELD
HOSPITAL ASSOCIATION.

No. 94-P-1354.

Middlesex. January 9, 1996. - March 14, 1996.

Present: WARNER, C.J., KAPLAN, & IRELAND, JJ.

*Practice, Civil,* Complaint, Amendment, Opening statement, Directed
   verdict. *Contract,* Construction of contract. *Negligence,* Construction
   work.

In an action brought against a nonprofit organization, the judge did not err
   in denying the plaintiffs' motion to amend the complaint to add a claim
   for violation of G. L. c. 93A, where nothing in the record indicated that
   organization in its dealings with the plaintiffs was acting in a business
   context so as to generate a profit. [175-176]
At the trial of a civil action, the judge erred in directing a verdict for the
   defendant after the plaintiffs' opening statement where there was a gen-
   uine issue of material fact with respect to the interpretation of the par-
   ties' contract and where proof of facts to support the plaintiffs' claim al-
   leging negligence of the defendant's agent was not foreclosed by anything
   stated in the opening. [176-178]

CIVIL ACTION commenced in the Malden Division of the
District Court Department on August 3, 1992.

On transfer to the Superior Court Department, a motion
for leave to file an amended complaint was heard by *Hiller B.
Zobel,* J., and the case was considered by him.

*Donald L. Conn, Jr.,* for the plaintiffs.

*John DiPietrantonio* for the defendant.

WARNER, C.J. The plaintiffs brought this action in contract
and tort against the defendant Melrose-Wakefield Hospital
Association (the hospital) for damages arising from water
damage to their property located at 87 Rowe Street in Mel-
rose. A judge of the Superior Court denied the plaintiffs' mo-

----

[1]Blanche Hubert.

tion to amend their complaint to add a claim under G. L. c. 93A, and, after the equivalent of the plaintiffs' opening statement, purported to direct a verdict for the hospital. The plaintiffs have appealed. We affirm the judge's order denying the motion to amend. We reverse the judgment dismissing the plaintiffs' complaint and remand for trial.

On August 3, 1992, the plaintiffs commenced this action in the District Court against the hospital for breach of contract and negligence. After summary judgment proceedings in the District Court,[2] the case was removed to the Superior Court in August, 1993. The plaintiffs moved for leave to amend their complaint by adding a claim pursuant to G. L. c. 93A on March 2, 1994. At a hearing on May 20, 1994, the trial judge, focusing on the language of the parties' contract, determined that it was not necessary to impanel a jury.[3] He then directed plaintiffs' counsel to make an opening.[4]

We recite the pertinent facts as stated in the opening. In

---

[2]The plaintiffs moved for summary judgment. On grounds that there were genuine issues of material fact as to each count of the complaint, the hospital opposed the motion, which was denied.

[3]The judge focused on the word "damage" in the contract between the parties and stated that the pertinent issue was whether that word meant direct damage to 87 Rowe, or whether it meant "damages" in the sense of compensation for consequential expenses. The judge stated:

> "Under the circumstances, it appeared to me that it was not necessary to impanel the jury, because after hearing counsel at length and talking about it with them, and examining numerous dictionaries, and whatever case law there might be in Massachusetts on the issue . . . I have reached the conclusion that the word damage referred to direct injury to the property."

[4]Neither party objected to the judge's suggested procedure, which we may best describe as affording the plaintiffs an opportunity to make an offer of proof. The judge indicated that he was treating the statement as an opening, although he stated, "I suppose technically what it is, is a hearing on the Motion for Summary Judgment." The record does not show, however, that the plaintiffs had renewed their motion for summary judgment in the Superior Court, or that the hospital had moved for summary judgment or a directed verdict. For present purposes, we accept the judge's characterization and treat his ruling as having directed a verdict on the opening statement. The standard of review for both the granting of a motion for summary judgment and for a directed verdict is the same — whether there was a genuine issue of material fact. Smith & Zobel, Rules Practice § 50.2 (1977).

April, 1990, the hospital approached the plaintiffs, who were long-time residents of 62 Rowe Street in Melrose, and offered to purchase their property. The plaintiffs initially were reluctant to sell, and the hospital offered to purchase the plaintiffs' home and move it down the street to 87 Rowe Street (87 Rowe). The plaintiffs agreed, and the parties entered into a purchase and sale agreement in April, 1990.

During the summer of 1990, the hospital demolished an existing structure at 87 Rowe and had Whitney Construction Company (Whitney Construction) construct a new foundation there for the plaintiffs' home. As Whitney Construction proceeded to construct the foundation, it began to fill with water, and Whitney Construction used five to six times the normal amount of crushed stone to address the water problem. With the authorization of the hospital, which still owned 87 Rowe and was aware of the water problem, Whitney Construction installed a sump pump.

Plaintiff Henry Hubert inspected the foundation at 87 Rowe and saw water pooling in the foundation. He became concerned and, through counsel, negotiated an agreement which the parties executed on October 25, 1990 (the compensation agreement), which provides in pertinent part:

> "The . . . [h]ospital . . . shall compensate . . . [the plaintiffs] for any damage which they incur as a result of water leaking or flooding into the basement of the property located at 87 Rowe . . . for a period commencing on October 3, 1990 and ending on October 2, 1992."

In October, 1990, the parties closed, and the plaintiffs' house was transported from 62 Rowe Street to 87 Rowe, and the plaintiffs occupied the house.

In June, 1991, the plaintiffs began to experience serious

---

When a judge perceives a dispositive issue of law involving the interpretation of a contract, see *Lexington Ins. Co.* v. *All Regions Chem. Labs, Inc.*, 419 Mass. 712, 713 (1995), the better practice is to invite a formal motion for summary judgment under Mass.R.Civ.P. 56, 365 Mass. 824 (1974), with proper notice to the parties and opportunity for them to respond. See *Feeney* v. *Boston,* 13 Mass. App. Ct. 1004, 1005 (1982), *S.C.,* sub nom. *Narine* v. *Powers,* 400 Mass. 343 (1987); *Langton* v. *Commissioner of Correction,* 34 Mass. App. Ct. 564, 575-576 (1993).

problems with water and flooding at 87 Rowe. Through counsel, they requested that the hospital address the problems pursuant to the compensation agreement. The hospital made no efforts in that regard.

Commencing in the summer of 1991, the plaintiffs hired several workmen for extensive repair work. A contractor installed a second sump pump in the plaintiffs' basement, put waterproof cement in several locations in the basement to stem the flow of water into the house, and constructed a total of three dry wells in the front and rear of 87 Rowe, all of which were reasonably necessary to deal with the water problem. The plaintiffs also had a generator installed in their yard to ensure that the sump pumps would continue to operate in the event that there was a power failure in the house. The plaintiffs expended in excess of $28,600 for repairs as a result of the water problem. The flooding, which occurred over a period of approximately two years, not only affected their basement, but also occasionally flooded their front yard to street level as a result of water pumped out of the basement by the sump pumps.

After the plaintiffs' opening, the judge ruled that the term "damage" in the compensation agreement was unambiguous and that it did not include compensation for consequential damages. He denied the motion to amend the complaint and ordered that judgment be entered dismissing the complaint.

1. *Denial of the motion to amend.* The plaintiffs claim error in the judge's denial of their motion for leave to amend their complaint. Broad discretion is vested in the judge in ruling on such motions. *Harvard Law Sch. Coalition for Civil Rights* v. *President & Fellows of Harvard College*, 413 Mass. 66, 72 (1992). *All Seasons Servs., Inc.* v. *Commissioner of Health & Hosps. of Boston*, 416 Mass. 269, 272 (1993). Under Mass.R.Civ.P. 15(a), 365 Mass 761 (1974), however, leave to amend a complaint "shall be freely given when justice so requires." A judge, therefore, should allow amendment "unless there appears some good reason for denying the motion." *All Seasons Servs., Inc.,* v. *Commissioner of Health & Hosps. of Boston, supra* at 272. Here, there was good reason because a G. L. c. 93A claim would not lie against the hospital. "[T]he proscription in [c. 93A] § 2 of 'unfair or deceptive acts or practices in the conduct of any trade or commerce' must be read to apply to those acts or practices

which are perpetrated in a business context." *Lantner* v. *Carson*, 374 Mass. 606, 611 (1978). See *Poznik* v. *Massachusetts Med. Professional Ins. Assn.*, 417 Mass. 48, 52 (1994). Nothing in the record indicated that the hospital, a nonprofit organization, was acting in a business context so as to generate a profit by its efforts. Cf. *All Seasons Servs., Inc.* v. *Commissioner of Health & Hosps. of Boston, supra* at 271. There was no abuse of discretion.

2. *Directed verdict on opening statement.* When a plaintiff's opening statement fails to show the existence of a cause of action, the trial judge may properly direct a verdict for the defendant. *Wornat Dev. Corp.* v. *Vakalis*, 403 Mass. 340, 348 (1988). It is settled, however, that " 'the practice of ordering a verdict on an opening . . . is a power which, for obvious reasons, should be exercised with great caution.' " *Upham* v. *Chateau de Ville Dinner Theatre, Inc.*, 380 Mass. 350, 351 n.2 (1980), quoting from *Carbone* v. *Trustees of N.Y., N.H. & H.R.R.*, 320 Mass. 710, 713-714 (1947). "Cases should be decided upon sworn evidence rather than upon an anticipatory statement of counsel which might bear little resemblance to the available evidence. In instances involving close questions, the safer course is to hear the evidence." *Douglas* v. *Whittaker*, 324 Mass. 398, 400 (1949).

Whether the judge properly directed a verdict is a question of law. Smith & Zobel, Rules Practice § 50.12 (1977). The judge must take the statements and all rational inferences therefrom in the opening as true, and regard them in the light most favorable to the plaintiff. *Singarella* v. *Boston*, 342 Mass. 385, 386 (1961), and cases cited. *Matranga* v. *West End Tile Co., Inc.*, 357 Mass. 194, 196 (1970), and cases cited. *Beaumont* v. *Segal*, 362 Mass. 30, 31 (1972). *Monterosso* v. *Gaudette*, 8 Mass. App. Ct. 93, 95 (1979). See *Urti* v. *Transport Commercial Corp.*, 479 F.2d 766, 768 (5th Cir. 1973). If any reasonable view of the facts and rational inferences supports the plaintiff's claims, the motion must be denied. See *Singarella, supra* at 386.

3. *The contract count.* The judge found that the use of the word "damage" was unambiguous in the compensation agreement. He ruled, relying on dictionary definitions, that it did not encompass consequential damages and directed a verdict

for the defendant. The plaintiffs claim that in drafting the agreement they intended to include compensation for consequential damages. The defendant counters that regardless of the intent of the parties, the contract language must be construed against the plaintiffs as drafters of the agreement.

When a written agreement, as applied to the subject matter, "is in any respect uncertain or equivocal in meaning, all the circumstances of the parties leading up to its execution may be shown for the purpose of elucidating but not of contradicting or changing its terms." *Robert Indus., Inc.* v. *Spence*, 362 Mass. 751, 753-754 (1973). *Keating* v. *Stadium Mgmt. Corp.*, 24 Mass. App. Ct. 246, 249-250 (1987). *Parrish* v. *Parrish*, 30 Mass. App. Ct. 78, 86-87 (1991), and cases cited. " 'Contract interpretation is largely an individualized process, with the conclusion in a particular case turning on the particular language used against the background of other indicia of the parties' intention.' We therefore 'construe the contract with reference to the situation of the parties when they made it and the objects sought to be accomplished.' " *Shea* v. *Bay State Gas. Co.*, 383 Mass. 218, 222-223 (1981) (citations omitted). "[T]he scope of a party's obligations cannot 'be delineated by isolating words and interpreting them as though they stood alone.' " *Starr* v. *Fordham*, 420 Mass. 178, 190 (1995) (citations omitted). The rule of construction that contract ambiguities must be resolved against the drafter " 'must give way to the primary and inflexible rule that . . . contracts, are to be construed so as to ascertain . . . the true intention of the parties.' " *Shea* v. *Bay State Gas. Co., supra* at 225.

It was error to direct a verdict for the defendant on the plaintiff's opening as there was a genuine issue regarding interpretation of the compensation agreement.

4. *The negligence count.* In ordering that judgment be entered for the hospital, the judge relied solely on his interpretation of the contract. The complaint, however, contains a second count against the hospital alleging negligent construction of the foundation by the hospital's agent, Whitney Construction. Ordinarily, the question of negligence is one of fact. *Mullins* v. *Pine Manor*, 389 Mass. 47, 56 (1983). On the

present record,[5] we are not prepared to say that the plaintiffs cannot establish their proof of negligence at trial. Compare *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 711-716 (1991); *Roderick* v. *Brandy Hill Co.*, *supra* at 949-950.

The order denying the motion to amend the complaint is affirmed. The judgment is reversed, and the case is remanded to the Superior Court for trial.

*So ordered.*

---

[5]Although the hospital asserts that the plaintiffs failed to identify an expert witness to establish negligent construction, in their opening the plaintiffs identified, without objection from the hospital, a witness who would testify as to the work done on the foundation to alleviate the flooding problems.